POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAMZA ELKHODARI, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>UNICYCIVE THERAPEUTICS, INC., SHALABH GUPTA, and JOHN TOWNSEND,<br><br>Defendants. | Case No.<br><br><u>CLASS ACTION</u><br><br>COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS<br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Hamza Elkhodari ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Unicycive Therapeutics, Inc. ("Unicycive" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the

1

Internet.  Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Unicycive securities between March 29, 2024 and June 27, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      Unicycive is a clinical-stage biotechnology company that identifies, develops, and commercializes therapies to address unmet medical needs in the U.S.  The Company is developing, among other therapies, oxylanthanum carbonate ("OLC"), a purported next-generation phosphate binder for the treatment of hyperphosphatemia in chronic kidney disease ("CKD") patients on dialysis.

3.      At all relevant times, Defendants consistently touted the prospects of a New Drug Application ("NDA") for OLC for the treatment of hyperphosphatemia in CKD patients on dialysis (the "OLC NDA"), assuring investors and analysts of the Company's readiness and ability to satisfy the U.S. Food and Drug Administration's ("FDA"), *inter alia,* manufacturing compliance requirements.

4.      In September 2024, Unicycive announced that it had submitted the OLC NDA to the FDA.

5.      Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.  Specifically,

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

Defendants made false and/or misleading statements and/or failed to disclose that: (i) Unicycive's readiness and ability to satisfy the FDA's manufacturing compliance requirements was overstated; (ii) the OLC NDA's regulatory prospects were likewise overstated; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

6.    On June 10, 2025, Unicycive issued a press release "announc[ing] an update on its [NDA] for [OLC] to treat hyperphosphatemia in patients with [CKD] on dialysis." Therein, the Company disclosed that the FDA "had identified deficiencies in cGMP [current good manufacturing practice] compliance at a third-party manufacturing vendor"—specifically, a third-party subcontractor of Unicycive's contract development and manufacturing organization ("CDMO")—"following an FDA inspection" and that, "given the identified deficiencies, any label discussions between the FDA and the Company are precluded."

7.    On this news, Unicycive's stock price fell $3.68 per share, or **40.89%**, to close at $5.32 per share on June 10, 2025.

8.    Then, on June 30, 2025, Unicycive issued a press release announcing that the FDA had issued a Complete Response Letter ("CRL") for the OLC NDA, citing the previously identified cGMP deficiencies at the third-party subcontractor of its CDMO.

9.    On this news, Unicycive's stock price[1] fell $2.03 per share, or **29.85%**, to close at $4.77 per share on June 30, 2025.

10.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

---

[1] On June 18, 2025, Unicycive effectuated a 1-for-10 reverse stock split, and the Company's common stock began trading on a split-adjusted basis on June 20, 2025.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## JURISDICTION AND VENUE

11.    The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.    Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Unicycive is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

14.    In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.    Plaintiff, as set forth in the attached Certification, acquired Unicycive securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

16.    Defendant Unicycive is a Delaware corporation with principal executive offices located at 4300 El Camino Real, Suite 210, Los Alto, California 94022.  The Company's common stock trades in an efficient market on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "UNCY."

4

17.    Defendant Shalabh Gupta ("Gupta") has served as Unicycive's Chief Executive Officer at all relevant times.  Defendant Gupta is also the Company's founder and Chairman of its Board of Directors.

18.    Defendant John Townsend ("Townsend") has served as Unicycive's Chief Financial Officer at all relevant times.

19.    Defendants Gupta and Townsend are collectively referred to herein as the "Individual Defendants."

20.    The Individual Defendants possessed the power and authority to control the contents of Unicycive's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Unicycive's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Unicycive, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.    Unicycive and the Individual Defendants are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

22.    Unicycive is a clinical-stage biotechnology company that identifies, develops, and commercializes therapies to address unmet medical needs in the U.S.  The Company is

developing, among other therapies, OLC, a purported next-generation phosphate binder for the treatment of hyperphosphatemia in CKD patients on dialysis.

23.     At all relevant times, Defendants consistently touted the prospects of an NDA for OLC for the treatment of hyperphosphatemia in CKD patients on dialysis, assuring investors and analysts of the Company's readiness and ability to satisfy the FDA's, *inter alia*, manufacturing compliance requirements.

**Materially False and Misleading Statements Issued During the Class Period**

24.     The Class Period begins on March 29, 2024. On March 28, 2024, during after-market hours, Unicycive issued a press release announcing its full year ("FY") 2023 financial results and business updates. The press release quoted Defendant Gupta as stating, in relevant part:

> The completion of enrollment in our pivotal OLC clinical trial was a critical achievement as we believe the novel characteristics of [OLC] will show its potential as a best-in-class product to treat hyperphosphatemia for patients with [CKD] on dialysis. Positive results from the trial ***will*** provide the basis to file a[n NDA] with the [FDA], and we remain on track with topline data expected from the trial towards the latter part of the second quarter of this year and plan to file the NDA shortly thereafter.

(Emphasis added.)

25.     The same day, also during after-market hours, Unicycive filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its FY ended December 31, 2023 (the "2023 10-K"). The 2023 10-K provided generic, boilerplate representations regarding risks related to "noncompliance with regulatory standards and requirements," including cGMP-related requirements, while stating that the Company has "manufacturing standards . . . established" and "[e]xecutive management . . . [with] considerable product launch experience" and "expertise in the biopharmaceutical industry," thereby downplaying these risks.

26.     Indeed, the 2023 10-K stated that "[w]e plan to continue to use third-party service providers, including contract manufacturing organizations, . . . to manufacture and supply the materials to be used during the development and commercialization of our product candidates[,]" thereby indicating the sufficiency of those third-party service providers for manufacturing purposes.

27.     Appended as exhibits to the 2023 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Individual Defendants certified, in relevant part, that the 2023 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were made, not misleading with respect to the period covered by this report[.]"

28.     On May 13, 2024, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its first quarter ended March 31, 2024 (the "1Q24 10-Q").  The 1Q24 10-Q contained the same statements as referenced in ¶ 26, *supra*, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

29.     Appended as exhibits to the 1Q24 10-Q were substantively the same SOX certifications as referenced in ¶ 27, *supra*, signed by the Individual Defendants.

30.     On June 25, 2024, Unicycive hosted a conference call with analysts and investors to discuss purported positive results from a clinical trial evaluating OLC, which the Company planned to submit as part of the OLC NDA.  During the call, a Brookline Capital Markets analyst asked, "in terms of manufacturing, where do you stand and what are the next steps in terms of buildout of the commercial team?"  In response, Defendant Gupta stated, in relevant part:

> With regard to manufacturing, we are very, very much ready and have tested,
> validated batches at multi hundreds of kilograms level. So we are ready, we are
> scaling up our manufacturing process. There is no problem. We are ready to launch

mid next year. So from manufacturing part, we have been working on these years to be able to scale up.

31.    On August 14, 2024, Unicycive issued a press release announcing its second quarter 2024 financial results and business updates.  The press release quoted Defendant Gupta as stating, in relevant part:

> Achieving successful results from our [OLC] pivotal trial was a significant milestone for the company and brings us one step closer to becoming a commercial organization . . . . [W]e believe that we have completed all the necessary requirements from this pivotal clinical trial to fulfill the FDA's requests. We remain on track to submit our NDA by the end of this month, and we maintain a high degree of confidence in the potential for OLC to be a best-in-class commercial product, if approved.

32.    The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its second quarter ended June 30, 2024 (the "2Q24 10-Q").  The 2Q24 10-Q contained the same statements as referenced in ¶ 26, *supra*, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

33.    Appended as exhibits to the 2Q24 10-Q were substantively the same SOX certifications as referenced in ¶ 27, *supra*, signed by the Individual Defendants.

34.    On September 3, 2024, Unicycive issued a press release announcing that it had submitted the OLC NDA to the FDA.  The press release stated that "specifications and practices related to chemistry, manufacturing and controls" supported the OLC NDA package, and quoted Defendant Gupta as stating, in relevant part:

> We believe our data support a differentiated and best-in-class therapy that will maintain phosphate control while reducing the onerous pill burden patients currently have to manage. Over the last several months, our team has worked diligently to reach this milestone, and we are now preparing to launch OLC, if approved.

35.    On November 11, 2024, Unicycive issued a press release touting that "the [FDA] has accepted the [NDA] for [OLC] and has set a Prescription Drug User Fee Act (PDUFA) target

action date of June 28, 2025." This press release, too, stated that "chemistry, manufacturing and controls (CMC) data" supported the OLC NDA package, and quoted Defendant Gupta as stating, in relevant part:

> We are thrilled with the FDA acceptance of our first NDA, a significant milestone towards our efforts to bring this important treatment option to patients with kidney disease if approved . . . . With our NDA now under review, we are preparing to commercialize and launch OLC in the second half of 2025, if approved.

36. On November 13, 2024, Unicycive issued a press release announcing its third quarter 2024 financial results and business updates. The press release quoted Defendant Gupta as stating, in relevant part:

> We are pleased with the tremendous progress we have made over the last several months highlighted by the acceptance of our [OLC NDA] which may result in the potential approval of our first drug in 2025 . . . . With the NDA acceptance now behind us, we are actively preparing to commercialize OLC with the goal of bringing this innovative new treatment to market in the second half of 2025.

37. The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its third quarter ended September 30, 2024 (the "3Q24 10-Q"). The 3Q24 10-Q contained the same statements as referenced in ¶ 26, *supra*, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

38. Appended as exhibits to the 3Q24 10-Q were substantively the same SOX certifications as referenced in ¶ 27, *supra*, signed by the Individual Defendants.

39. On March 31, 2025, Unicycive issued a press release announcing its FY 2024 financial results and business updates. The press release quoted Defendant Gupta as stating, in relevant part:

> 2025 is positioned to be a transformational year for Unicycive, with the near-term potential for FDA approval and commercial launch of [OLC] . . . . We continue to actively prepare to launch OLC, including . . . preparing our commercial infrastructure to rapidly make OLC available to patients upon approval.

40.     The same day, Unicycive filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for its FY ended December 31, 2024 (the "2024 10-K"). The 2024 10-K continued to provide generic, boilerplate representations regarding risks related to "noncompliance with regulatory standards and requirements," including cGMP-related requirements, while stating that the Company has "manufacturing standards . . . established" and "[e]xecutive management . . . [with] considerable product launch experience" and "expertise in the biopharmaceutical industry," thereby downplaying these risks.

41.     In addition, the 2024 10-K contained the same statements as referenced in ¶ 26, *supra*, indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

42.     The 2024 10-K also stated that "chemistry, manufacturing and controls (CMC) data" supported the OLC NDA package.

43.     Appended as exhibits to the 2024 10-K were substantively the same SOX certifications as referenced in ¶ 27, *supra*, signed by the Individual Defendants.

44.     On May 14, 2025, Unicycive issued a press release announcing its first quarter 2025 financial results and business updates. The press release quoted Defendant Gupta as stating, in relevant part:

> We are making incredible strides as we prepare for the potential FDA approval of [OLC] so we can bring this treatment to people with [CKD] on dialysis as efficiently as possible . . . . We remain dedicated to bolstering our commercial infrastructure as we strive to deliver a much-needed solution to patients and healthcare providers.

45.     The same day, Unicycive filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for its first quarter ended March 31, 2025 (the "1Q25 10-Q"). The 1Q25 10-Q contained the same statements as referenced in ¶ 26, *supra*,

indicating the sufficiency of Unicycive's third-party service providers for manufacturing purposes.

46.    Appended as exhibits to the 1Q25 10-Q were substantively the same SOX certifications as referenced in ¶ 27, *supra*, signed by the Individual Defendants.

47.    The statements referenced in ¶¶ 24-46 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) Unicycive's readiness and ability to satisfy the FDA's manufacturing compliance requirements was overstated; (ii) the OLC NDA's regulatory prospects were likewise overstated; and (iii) as a result, Defendants' public statements were materially false and misleading at all relevant times.

48.    In addition, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Unicycive to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations."  Defendants failed to disclose, *inter alia*, Unicycive's true readiness and ability (or lack thereof) to satisfy the FDA's manufacturing compliance requirements, as well as the OLC NDA's true regulatory prospects.  Defendants' failure to disclose these issues violated Item 303 because these issues represented known trends or uncertainties that were likely to have a material unfavorable impact on the Company's business and financial results.

**The Truth Emerges**

49.    On June 10, 2025, during pre-market hours, Unicycive issued a press release "announc[ing] an update on its [NDA] for [OLC] to treat hyperphosphatemia in patients with [CKD] on dialysis."  The press release stated, in relevant part:

The FDA communicated to the Company that it had identified deficiencies in cGMP compliance at a third-party manufacturing vendor (one of its CDMO's third-party subcontractors and not its Drug Substance vendor) following an FDA inspection.

The FDA indicated that, given the identified deficiencies, any label discussions between the FDA and the Company are precluded. The Company has responded to all FDA information requests and expects a final decision from the FDA by the PDUFA action date of June 28, 2025.

50.     On this news, Unicycive's stock price fell $3.68 per share, or **40.89%**, to close at $5.32 per share on June 10, 2025.

51.     Then, on June 30, 2025, during pre-market hours, Unicycive issued a press release announcing that the FDA had issued a CRL for the OLC NDA, which "cited deficiencies previously identified at a third-party manufacturing vendor [purportedly] unrelated to [OLC.]" The press release stated, in relevant part:

[T]he [FDA] has issued a CRL for its [NDA] for OLC to treat hyperphosphatemia in patients with [CKD] on dialysis.

* * *

After submitting the NDA, and as a part of the application review and routine information requests, the FDA notified Unicycive that a third-party manufacturing vendor of its main [CDMO] was cited for deficiencies following a cGMP inspection.

52.     On this news, Unicycive's stock price fell $2.03 per share, or **29.85%**, to close at $4.77 per share on June 30, 2025.

53.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

54.     During the Class Period, Defendants had both the motive and opportunity to commit fraud. They also had actual knowledge of the misleading nature of the statements they

made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

### PLAINTIFF'S CLASS ACTION ALLEGATIONS

55.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Unicycive securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures. Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

56.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Unicycive securities were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Unicycive or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

57.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

13

58.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

59.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Unicycive;

- whether the Individual Defendants caused Unicycive to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Unicycive securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

60.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

61.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Unicycive securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Unicycive securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

62. Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

63. Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

64. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

65. This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

66.    During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities.  Such scheme was intended to, and, throughout the Class Period, did:  (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Unicycive securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Unicycive securities and options at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

67.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Unicycive securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Unicycive's finances and business prospects.

68.    By virtue of their positions at Unicycive, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose

16

such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

69.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Unicycive, the Individual Defendants had knowledge of the details of Unicycive's internal affairs.

70.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Unicycive. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Unicycive's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Unicycive securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Unicycive's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Unicycive securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

71.    During the Class Period, Unicycive securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Unicycive securities at prices artificially inflated by Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Unicycive securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Unicycive securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

72.     By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

73.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### (Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)

74.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

75.     During the Class Period, the Individual Defendants participated in the operation and management of Unicycive, and conducted and participated, directly and indirectly, in the

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

conduct of Unicycive's business affairs. Because of their senior positions, they knew the adverse non-public information about Unicycive's misstatement of income and expenses and false financial statements.

76. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Unicycive's financial condition and results of operations, and to correct promptly any public statements issued by Unicycive which had become materially false or misleading.

77. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Unicycive disseminated in the marketplace during the Class Period concerning Unicycive's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Unicycive to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Unicycive within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Unicycive securities.

78. Each of the Individual Defendants, therefore, acted as a controlling person of Unicycive. By reason of their senior management positions and/or being directors of Unicycive, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Unicycive to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Unicycive and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

79.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Unicycive.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.    Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.    Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.    Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: August 15, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

HOLZER & HOLZER, LLC
Corey D. Holzer
(*pro hac vice* application forthcoming)
211 Perimeter Center Parkway
Suite 1010
Atlanta, Georgia 30346
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com

*Attorneys for Plaintiff*

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

# CERTIFICATION PURSUANT
# <u>TO FEDERAL SECURITIES LAWS</u>

1.　　I, ___Hamza Elkhodari_____, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 ("Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 ("Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.　　I have reviewed a Complaint against Unicycive Therapeutics, Inc. ("Unicycive") and authorize the filing of a comparable complaint on my behalf.

3.　　I did not purchase or acquire Unicycive securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or Exchange Act.

4.　　I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired Unicycive securities during the Class Period as specified in the Complaint, including providing testimony at deposition and trial, if necessary. I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.　　The attached sheet lists all of my transactions in Unicycive securities during the Class Period as specified in the Complaint.

6.　　During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.　　I agree not to accept any payment for serving as a representative party on behalf of the Class as set forth in the Complaint, beyond my *pro rata* share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.


Executed ___8/6/2025_____
        **(Date)**



                                Signed by:

                                *Hamza Alkhodari*
                                _____
                                45913F59563A44F...
                                **(Signature)**



                                Hamza Elkhodari
                                _____
                                **(Type or Print Name)**

**Unicycive Therapeutics, Inc. (UNCY)**                                        **Hamza Elkhodari**

### List of Purchases/Acquisitions and Sales

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase/Acquisition | 6/9/2025 | 2,500 | $0.9600 |
| Sale | 6/27/2025 | (250) | $6.4046 |